## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **ELIZABETH LOPES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **VISIBLE SUPPLY CHAIN** | ) | |
| **MANAGEMENT, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

COMES NOW Plaintiff Elizabeth Lopes ("Lopes" or "Plaintiff"), by and through undersigned counsel, and submits her Complaint against Defendant Visible Supply Chain Management, LLC ("Visible SCM" or "Defendant"), stating as follows:

### NATURE OF COMPLAINT

1.

Lopes brings this action against Defendant for interference and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §2601, et seq. ("FMLA"), discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101, et. seq.

(collectively, the "ADAAA"), and discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e, *et seq.* (collectively, "Title VII")

## ADMINISTRATIVE PROCEDURES

### 2.

Lopes has fulfilled all conditions necessary to proceed with this cause of action under Title VII and the ADAAA.

### 3.

Lopes filed a charge of discrimination against Defendant with the EEOC on June 10, 2021 (Charge No. 410-2021-05204), alleging discrimination and retaliation in violation of Title VII and ADAAA.

### 4.

The EEOC issued its Notice of Right to Sue for the Charge on August 10, 2022.

### 5.

Lopes timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## JURISDICTION AND VENUE

### 6.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 2617 (FMLA), 42 U.S.C. § 12117 (ADA), and 28 U.S.C. § 1343 (civil rights) because this is a civil action arising under the FMLA, Title VII, and the ADAAA.

### 7.

Venue is proper in this Court under 28 U.S.C. § 1391 because it is a district wherein Defendant resides and does business and where a substantial part of the events or omissions giving rise to Lopes's claims occurred.  Venue is further proper under 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

### 8.

Lopes is female citizen of the United States and was at all times relevant to her claims a citizen and resident of the State of Georgia.

### 9.

At all times referenced herein, Lopes was an "eligible employee" as defined under the FMLA because she (1) had been employed by Defendant for at least 12 months; (2) had been employed for at least 1,250 hours of service during the 12-

month period immediately preceding the commencement of her requested FMLA leave; and (3) was employed at a worksite where the employer had at least 50 employees within 75 miles.

10.

Plaintiff is and, at all times relevant hereto, was an individual with a disability within the meaning of the ADAAA .

11.

Plaintiff has a disability as defined in the ADAAA at 42 U.S.C. §12102(1)(A) in that she, at all times relevant, had a physical impairment that substantially limited her in one or more major life activities or major bodily functions, including, but not limited to, performing manual tasks, eating, standing, lifting, and working. *See* 29 C.F.R. § 1630.2.

12.

Specifically, Plaintiff suffered from pregnancy-related complications that resulted in severe lethargy, severe hair loss, inability to perform physical labor involving heavy lifting and extended periods of standing up, fetal distress, and inability to carry child to full term. *See* 29 C.F.R. § Pt. 1630, App. ("a pregnancy-related impairment that substantially limits a major life activity is a disability under the first prong of the definition.")

13.

At all relevant times, Plaintiff was and is a "qualified individual" as defined by 42 U.S.C. §12111(8) of the ADAAA because she was able to perform the essential functions of her position with or without reasonable accommodation.

14.

Defendant is a foreign corporation with its principal place of business in Salt Lake City, Utah.

15.

Defendant is a covered employer under the FMLA, ADAAA, and Title VII.

16.

Defendant is a supply chain management company that offers fulfillment, logistics, packaging, and parcel products to its customers.

17.

Defendant operates a fulfillment facility located in Fairburn, Georgia.

18.

Defendant may be served with process through its registered agent, CT Corporation System, located at 289 S. Culver St., Lawrenceville, GA, 30046-4805.

## FACTS

### 19.

Lopes was employed by Defendant as an Associate at the Fairburn, Georgia warehouse from April 30, 2018, until December 15, 2020.

### 20.

Lopes worked on the warehouse dock and was primarily responsible for sorting packages and reviewing shipping labels.

### 21.

Lopes's job functions involved heavy lifting and required Lopes to stand on her feet for extended periods of time.

### 22.

In July 2020, Lopes informed Defendant that she was pregnant and would need FMLA leave for the birth of her child.

### 23.

Lopes provided a medical certification from her doctor supporting the need for continuous FMLA leave for the birth of her child, intermittent FMLA leave for the duration of her pregnancy, a reduced work schedule of no more than 40 hours a week, and additional medical accommodations in the form of no pushing, pulling, or lifting anything over 20 lbs.

24.

Defendant approved the requested continuous FMLA leave for the birth of the child, intermittent leave during the pregnancy 1-4 times per month with 1-4 days per episode, and the requested accommodations.

25.

Lopes was originally scheduled to take continuous FMLA leave for the birth of her child beginning in February 2021.

26.

However, as her pregnancy progressed, Lopes started experiencing significant pregnancy complications, including the baby not gaining weight and Plaintiff experiencing severe hair loss, lethargy, and inability to stand on her feet for extended periods of time.

27.

Making matters worse, Defendant only sporadically complied with Lopes's restrictions of a reduced work schedule and no pushing, pulling, or lifting anything over 20 lbs.

28.

Indeed, whenever the person who was supposed to cover those duties for Lopes failed to appear for work or otherwise was unable to cover for Lopes,

Defendant required Lopes to violate her medical restrictions and perform full duty.

29.

As Lopes became increasingly concerned for the wellbeing of her and her baby, she inquired with Defendant about starting her FMLA leave early.

30.

Lopes told Defendant's Director of Benefits, Elizabeth McArthur, during multiple phone calls that she was experiencing severe pregnancy symptoms and complications.

31.

On November 23, 2020, Lopes emailed McArthur and asked if she could move up her continuous FMLA leave to December 2020.

32.

McArthur explained that it was possible to start the FMLA earlier than planned, but she did not get back to Lopes with any further details about what she would have to do to start the leave early and did not mention needing additional paperwork from Lopes.

33.

On December 14, 2020, Lopes followed up with Lisa Matthews, Director of HR, via email, stating:

I am contacting you in regards to my FMLA approval. I am aware of the length that I am allowed to have, along with all the specifications dealing with my PTO. I had a conversation with Elizabeth McArthur about starting it earlier then [sic] the exact day I am due. She did say that it was possible, but she never got back to me to tell her a date. I had planned to start tomorrow December 15, 2020, I hope it isn't too late to update everything. I just didn't want to take me [sic] leave and nothing be recorded on paper as to why I wouldn't be at work. Please get back to me if there is anything that needs to be done or if there's any updates. I also copied my manager to this so he is aware.

34.

McArthur sent her a response shortly thereafter, stating, in relevant part: "If you are going to be off now, we will need you to provide updated FMLA paperwork to approve."

35.

This was the first time that Defendant mentioned the need for new FMLA documentation from Lopes, and it was unclear to Lopes exactly what documentation was needed.

36.

Lopes tried to call McArthur, but she did not pick up the phone.

37.

Later that day, McArthur sent an email to Matthews and Lopes's supervisor, Ellen Sawicz, which did not copy Lopes, which said, in relevant part:

I just spoke with Elizabeth Lopes. Her current leave is not medical leave, it is actually personal leave. I discussed with her that we may be able to provide a

couple of weeks off, but she would need to return to work. She stated that she needs to find a place to live because her lease is up in March and that she had a lot of other things that she needs to do. It became clear during the conversation that she was not wanting to come back to work and that it was not related to FMLA (which is due to start February 24th). When I explained that the leave would not be approved, she said she would like to resign. **It just sounded to me like she doesn't want to work anymore** . . . . **[W]e can't maintain her medical coverage so she can use 2 months to find an apartment and baby furniture** . . . .

38.

McArthur's summary of this conversation, which reeks of preconceived notions about why a pregnant woman would need leave, is inaccurate and intentionally misleading.

39.

Lopes never stated that she needed leave for the purpose of moving and/or buying baby furniture.

40.

Nor did she mention any plan, intention, or desire to resign her employment with the company.

41.

Neither McArthur nor Matthews made any attempt to confirm with Lopes whether their assumptions about why a pregnant woman would need to go on early leave were in fact accurate.

42.

Lopes came to work the next day, December 15, 2020, since she had not yet received confirmation from Defendant of her new FMLA start date.

43.

While working on the dock on December 15, 2020, Lopes was approached by Matthews, Director of HR.

44.

Matthews inquired why Lopes was trying to take time off, and Lopes explained that she was experiencing pregnancy complications and needed to start her FMLA leave early.

45.

Matthews asked if Lopes could continue to work reduced work hours.

46.

Lopes responded that she did not think reduced work hours would suffice, especially since Defendant had already repeatedly failed to comply with her current reduced hours accommodation by requiring her to work when other coworkers who were supposed to cover for her called out sick.

47.

Matthews then told Lopes that the most she could offer her was two weeks of

leave and emphasized that Lopes would have to return to work before the birth of the child.

48.

Lopes responded that two weeks of leave would not be sufficient because she would only be even more pregnant and have even worse symptoms in two weeks. Rather, she needed to be out until the baby was born.

49.

At that point, Matthews told Lopes that her FMLA leave would not be approved and that she had to sign resignation paperwork and then reapply after giving birth because the company would not offer more than two weeks of leave before the birth of the child.

50.

Lopes complied and signed the resignation paperwork, even though she had no desire to resign her employment with Defendant and had every intention of returning to work full duty following the birth of her child, because she feared that continuing to work would jeopardize the health of both her and her unborn child.

51.

Defendant terminated Plaintiff's employment by forcing her to resign against her will.

52.

Lopes's concern about her pregnancy complications turned out to be well-founded; she had to be induced three weeks early as a result of fetal distress and inadequate fetal weight gain.

53.

Lopes has suffered significant damages, including but not limited to loss of pay and significant emotional distress, as a result of Defendant's unlawful actions.

## COUNT I – FMLA Interference

54.

Lopes repeats and realleges the preceding paragraphs as if fully set forth herein.

55.

Lopes was an eligible employee under the FMLA.

56.

Defendant is a covered employer under the FMLA.

57.

Lopes was entitled to and had been approved for continuous FMLA leave for the birth of her child and intermittent leave during her pregnancy 1-4 times per month with 1-4 days per episode.

58.

In addition to needing FMLA leave for her pregnancy, Lopes was also entitled to FMLA leave for her own serious health condition during the last couple of months of her pregnancy.

59.

The need for FMLA leave for her own serious health condition was unforeseen, and Lopes notified Defendant of the need for such leave as soon as practicable.

60.

Defendant failed to follow the FMLA notice requirements set forth in 29 C.F.R. § 825.300(b)-(d) with regard to Plaintiff's request for unforeseen leave to due to her own serious health condition.

61.

Defendant failed to give Plaintiff fifteen calendar days to provide any required certification. *See* 29 C.F.R. § 825.305(b).

62.

Instead, Defendant terminated Plaintiff's employment the day after it vaguely requested "updated documentation" from Plaintiff.

63.

By terminating Lopes's employment, Defendant improperly interfered with and denied Lopes benefits under the FMLA to which she was entitled, including the right to take qualifying leave and to be returned to her position upon the conclusion of the leave.

64.

Defendant also improperly interfered with Lopes's FMLA rights by refusing to allow Lopes to utilize the intermittent FMLA leave for which she was eligible and had already been approved.

65.

As a direct and proximate result of Defendant's wrongful acts and omissions, Lopes has suffered and continues to suffer substantial losses, including past and future lost wages and benefits.

**COUNT II – FMLA Retaliation**

66.

Lopes repeats and realleges the preceding paragraphs as if fully set forth herein.

67.

Lopes was an eligible employee under the FMLA and qualified for her

position.

68.

Defendant is a covered employer under the FMLA.

69.

Lopes exercised her FMLA rights by requesting FMLA leave.

70.

Defendant subjected Lopes to a materially adverse action when it terminated her employment.

71.

There is a causal connection between Lopes's exercise of her rights under the FMLA and the subsequent adverse action (termination).

72.

Defendant's proffered reason for the termination is false and mere pretext for retaliation.

73.

As a direct and proximate result of Defendant's wrongful acts, Lopes has suffered and continues to suffer substantial losses, including past and future lost wages and benefits.

**COUNT III – Title VII Discrimination (Pregnancy)**

74.

Lopes repeats and realleges the preceding paragraphs as if fully set forth herein.

75.

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of gender and pregnancy.

76.

When it adopted the Pregnancy Discrimination Act, Congress amended Title VII to provide that discrimination on the basis of gender includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions."

77.

At all times relevant, Lopes was a member of a protected class in that she is a female and was pregnant at the time she worked for and was terminated from Defendant.

78.

Lopes suffered pregnancy-related complications and requested leave based on such complications.

79.

Lopes was treated less favorably than similarly situated individuals outside her protected class with regard to the terms, conditions, and privileges of her employment.

80.

Defendant treated Lopes differently that similarly situated non-pregnant individuals in its application of leave and accommodation policies.

81.

Lopes was ultimately terminated because of her pregnancy.

82.

As a direct and proximate result of Defendant's wrongful acts, Lopes has suffered and continues to suffer substantial economic and non-pecuniary damages.

83.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its actions toward Plaintiff were undertaken in bad faith.

84.

Lopes is entitled to lost wages and benefits, front pay, compensatory damages, punitive damages, attorney fees and costs, prejudgment interest, and any other relief available under the law.

## COUNT IV
## ADAAA Discrimination and Failure to Accommodate

85.

Lopes repeats and realleges the preceding paragraphs as if fully set forth herein.

86.

Lopes has at all relevant times been a qualified individual who can perform the essential functions of her job with or without reasonable accommodation.

87.

Lopes has at all relevant times had a covered disability under the ADAAA.

88.

Lopes was subjected to unlawful discrimination because of her disability.

89.

Defendant repeatedly violated Lopes's medical restrictions of a reduced work schedule and no pushing, pulling, or lifting anything over 20 lbs.

90.

Defendant denied Lopes's request for reasonable accommodations in the form of temporary leave and failed to engage in the interactive process.

91.

As a direct and proximate result of Defendant's wrongful acts, Lopes has

suffered and continues to suffer substantial economic and non-pecuniary damages.

92.

Defendant willfully and wantonly disregarded Lopes's rights, and its actions toward Lopes were undertaken in bad faith.

93.

Lopes is entitled to lost wages and benefits, front pay, compensatory damages, attorney fees and costs, prejudgment interest, and any other relief available under the law.

**COUNT V**
**ADAAA Retaliation and Interference**

94.

Lopes repeats and realleges the preceding paragraphs as if fully set forth herein.

95.

Lopes has at all relevant times been a qualified individual who can perform the essential functions of her job with or without reasonable accommodation.

96.

Lopes has at all relevant times had a covered disability under the ADAAA.

97.

Defendant interfered with Lopes's statutorily protected ADAAA rights when

it subjected Lopes to different terms, conditions, and privileges of employment after she sought leave and accommodations for a known disability.

98.

Lopes engaged in protected activity under the ADAAA when she requested reasonable accommodations for her disability, including light duty work, a reduced schedule, and temporary leave.

99.

Defendant subjected Lopes to a materially adverse action when it terminated her employment.

100.

There was a causal connection between the protected conduct and the subsequent materially adverse action.

101.

Defendant's proffered reason for Lopes's termination is false and mere pretext for retaliation.

102.

As a direct and proximate result of Defendant's wrongful acts, Lopes has suffered and continues to suffer substantial economic and non-pecuniary damages.

103.

Defendant willfully and wantonly disregarded Lopes's rights, and its actions toward Lopes were undertaken in bad faith.

104.

Lopes is entitled to lost wages and benefits, front pay, compensatory damages, attorney fees and costs, prejudgment interest, and any other relief available under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

a) Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character or reputation, injury to credit standing, loss of health, and any other non-pecuniary losses incurred as a result of the discriminatory conduct;

b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts;

c) Past and future lost wages and benefits, plus interest;

d) Liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

e) All costs and reasonable attorneys' fees incurred in connection with this action; and

f) Such additional or alternative relief as the Court deems just and proper

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Respectfully submitted,

**GARDNER LAW FIRM, LLC**
*/s/Jerilyn E. Gardner*
Jerilyn E. Gardner
Georgia Bar No. 139779
1000 Parkwood Cir. SE
Suite 900
Atlanta, Georgia 30339
(404) 383-0992 (Phone)
(404) 383-1102 (Fax)
jgardner@gardnerjlaw.com

**BERGMAR LAW LLC**

*/s/ Nina Maja Bergmar*
Nina Maja Bergmar
Georgia Bar No. 982879
135 Auburn Ave. NE, Suite 210
Atlanta, GA 30303
nmb@bergmarlaw.com
Tel. (470) 239-2096
Fax. (404) 806-8696

*Attorneys for Plaintiff*